SHATTUCK v. PHILLIPS, *Treasurer of Pike County, Appellant.*

**Division of School District, lying in two or more Counties.**
Section 7027, Revised Statutes 1879, provides that a school district lying within two or more counties may be divided, where a majority of the qualified voters residing in the fractional portion of such district within either county, desire to attach themselves to an adjoining district within their own county, or to form a separate district; *Held*, that a vote of such qualified voters upon a proposition to withdraw from that part of the district lying outside their own county was ineffectual to divide such district, when no vote was taken to unite with an adjoining district, or to form a separate district.

*Appeal from Pike Circuit Court.*—HON. G. PORTER, Judge.

AFFIRMED.

*Robinson & Smith* for appellant.

*Fagg, Reynolds & Fagg* for respondents.

MARTIN, C.—The plaintiffs on the 5th day of September, 1879, as school directors filed their petition for the writ of mandamus against the defendant as county treasurer of Pike county.

It appears from the evidence that School District No. 1, township 52, range 5, west, was composed of territory lying in both Audrain and Pike counties. The school house was located in Audrain county and had been destroyed by fire. The insurance upon it in the sum of $213 had been collected from the insurance company and deposited with the defendant in his capacity as treasurer. The directors of the district desiring to rebuild the school house drew their warrant upon the treasurer for that purpose. He declined to pay, whereupon they made their application for the writ of mandamus to compel him to pay. An alternative writ was issued on the petition. In his return to the writ the defendant denied all right in the plaintiffs to draw the warrant and all obligation on his part to pay it. The trial resulted in a judgment for the plaintiffs, from which the defendant has appealed.

The defense urged by the treasurer at the trial consisted of a certain record of an election, by which it was claimed that the district had been divided under section 7027, Revised Statutes 1879. If this defense is satisfactorily established, the defendant was justified in refusing to pay the money over to the directors of the old district. In the event of a division, the school property of the district must be divided and apportioned to the two divisions according to law, and the order of a board of directors which had

6—73

ceased to represent the whole district, or to own the whole fund, would not be obligatory upon him.

The record of the election which it was claimed had effected a division of the district, reads as follows : " The qualified voters of that part of School District No. 1, township 52, range 5, west, which lies in Pike county, met at the residence of E. G. Glover, in said district, on the 31st day of January, 1879, pursuant to notice posted, and at the hour of two o'clock p. m. organized by electing S. T. Noell, president, and John Reading, clerk of said election. Whereupon the polls were by the president declared to be open, when the qualified voters proceeded to vote for and against withdrawing from that part of said school district which lies in Audrain county, depositing the following styled ticket : 'Division on county line, Yes.' 'For dividing, No.' Then follow the names of the voters numbering twenty-six, after which appears the footing or result, in these words : ' Yes, 14—No, 12.' "

There was evidence tending to show satisfactorily enough that the following notice had been posted in three public places in the school district on the 9th day of January, 1879, and was signed by eighteen or nineteen qualified voters of the district :

NOTICE.—" The qualified voters of that part of School District No. 1, township 52, range 5, west, being in Pike county, are hereby notified that an election will be held at the residence of E. G. Glover, on the 31st day of January, 1879, for the purpose of voting on the proposition to separate that part of School District No. 1, township 52, range 5, west, which lies in Pike county, from that part of said district which lies in Audrain county, said election to commence at two o'clock and close at four o'clock on said day."

There is no evidence in the record of any subsequent proceedings at this meeting or any other meeting of the voters in which it was decided whether they would attach themselves to some adjoining district or create a new dis-

trict out of that portion of the territory of the old district which lay in Pike county.

The single question of importance in the case is, whether these proceedings were sufficient in law to effect a division of the district under section 7027. And this brings us to consider the import and meaning of that section, which reads as follows:

"Whenever any school district or districts shall be divided by county lines, and a majority of the qualified voters residing in either fractional part thereof may desire to attach themselves to an adjoining district within their own county, or form a separate district, they shall hold an election for that purpose, first giving twenty days notice by posting up printed or written handbills in three of the most public places in such fractional district, stating the time, place and object of the election; and if a majority of the votes cast at such election be in favor of uniting themselves to an adjoining district in their own county, or forming a separate district, they shall notify the district clerks of the districts interested of the result of the election; and if it is desired by such fractional district and a portion of the adjoining district to form a new district, it shall be the duty of such adjoining district school board to so change their boundary lines as may be agreeable to the inhabitants interested therein, and notify the county clerk and county commissioner of the change so made; but if such division cannot be so made by the district board, or if they refuse or neglect to act, when notified of such desire, they may appeal to the county commissioner, who shall proceed to ascertain the facts in the case, and locate the boundaries of such new district as appears to be just and proper, and to the best interest of the inhabitants interested therein—such new district to be governed as hereinbefore provided in forming new districts; provided, that if a school house has been located and built by a district thus divided by a county line, and that portion of the district desires to withdraw in which the school house has been located and built, they

shall first pay to the portion of the district situate in the adjoining county their *pro rata* share of the value of such school house." R. S. 1879, § 7027.

In construing this section it will be observed that the division authorized by the statute can be effected only by a majority vote, and that this vote is to be taken upon the question of attaching the fractional part of the district voting, to some adjoining district, or of forming a separate district out of it. The language of the act in this respect is very clear and expressive : "And if a majority of the votes cast at such election be in favor of uniting themselves to an adjoining district in their own county, or forming a separate district, they shall notify the district clerks of the districts interested in the result of the election." Now it is apparent from an inspection of the minutes of this election that the proposition of the section required to be decided by a majority vote was not voted upon at all. The minutes of the meeting inform us that " the voters proceeded to vote for and against withdrawing from that part of said school district which lies in Audrain county." Neither at that or any subsequent meeting does it appear that the voters were in favor of attaching themselves to an adjoining district or forming a new district to be entirely in Pike county. No vote to unite with an adjoining district, or form a separate district, has ever been taken. No boundary lines of any new district can be determined upon as the matter stands at present; nor can any interested district be notified of a result affecting them. How can any one upon the strength of this vote certify that a majority of the voters were in favor of uniting themselves to an adjoining district or forming a separate one ? Which of these results could any one certify from this vote ? The desire to form a separate district or unite with an adjoining one necessarily implies a separation or withdrawal from the old district. But the desire to separate and withdraw does not imply or contain the desire to unite with another district or create a new one. The act of separation as a dis-

tinct act is not contemplated in the section. It is authorized only as incident to the desire and act of uniting with another district or forming a new one. To effect a legal division of the district the statute must be complied with. The vote and notice of the vote must comply with its requirements. As the vote in this case fails to comply with either the letter or spirit of the statute, the district must be regarded as remaining undivided. This leaves the directors of the old district in full power and authority as if no division had been attempted. Their authority must continue unimpaired until terminated or limited by a legal division. Accordingly the funds of the district in the hands of the treasurer remained there subject to the lawful warrant of the directors, which the treasurer should have recognized and paid. The judgment is affirmed. PHILIPS, C., concurs; WINSLOW, C., absent.